USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/19/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                     :
SHELDON HERRON,                              :
                            Petitioner,            :
                                                     :           17-CV-7221 (VEC)
                 -against-                           :
                                                     :           ORDER ADOPTING
                                                     :           REPORT AND
LEROY FIELDS, et al.,                        :           RECOMMENDATION
                                  Respondents.    :
                                                     :
------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

        On October 4, 2017, Petitioner Sheldon Herron filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, *pro se*, challenging his conviction in New York State Supreme Court for assault in the second degree and resisting arrest and his sentence of five years followed by five years of supervised release. Petition, Dkt. 2. On January 10, 2018, this Court ordered the Respondents to answer the Petition and referred the action to Magistrate Judge Freeman for the preparation of a report and recommendation ("R&R") pursuant to 28 U.S.C. § 636(b). Dkts. 9, 10. On January 7, 2021, Judge Freeman issued a report and recommendation, recommending that the Petition be denied. R&R, Dkt. 26. On January 21, 2021, Petitioner filed objections to the R&R.[1] Pl. Objections, Dkt. 27.[2] For the following reasons, the Court ADOPTS the R&R in full, and the Petition is DENIED.

---

[1] The Court mailed the R&R to Herron on January 13, 2021. In the R&R, Judge Freeman notified the parties that, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), they had 14 days to file written objections to the R&R's findings or 17 days if service was made by mail. R&R, Dkt. 26, at 39. Accordingly, Herron had until January 30, 2021 to file objections to the R&R. In his objections, Herron reports that he received an email notification on January 7, 2021 that the Report and Recommendation had been filed, but that he only received the R&R by mail on January 16, 2021. Pl. Objections, Dkt. 27 at 6. Herron argues that it "is not fair by any standard" that he had only until January 21, 2021 to file his objections. *Id.* at 6–7. Though it is unfortunate that Herron miscalculated the deadline by which he had to file any objections, the Court finds that he was not prejudiced in any way. The R&R clearly states that "requests for an extension of time for filing objections" could be directed to the undersigned. R&R at 39. Herron could have, but did not, request an extension.

[2] The filing at docket entry 27 is the full version of Herron's objections. Part of that filing is duplicated in the filing at docket entry 28. Because the filing at docket entry 27 includes Herron's full objections, the Court only

## BACKGROUND

Herron was arrested on October 4, 2013 as part of an NYPD drug "buy and bust" operation in the West Village of Manhattan. R&R at 3. At trial, NYPD Detective Christopher Baumgardt testified that he approached Herron because he matched the description of an individual involved in a sale of narcotics to an undercover officer.[3] *Id.* at 6. Baumgardt testified that he shouted "police" and tried to stop Herron but that Herron struck him and ran in the opposite direction. *Id.* at 6–7. The detective further testified that once he caught up to Herron, another scuffle ensued; he was only able to make the arrest once other officers arrived to help. *Id.* at 7. No prerecorded buy money,[4] narcotics, or drug-related paraphernalia were found on Herron. *Id.*

Baumgardt further testified that two fingers on his right hand were injured as a result of his altercation with Herron, although he could not remember exactly when the injury occurred. *Id.* at 8. Other officers testified that Baumgardt complained of pain at the precinct later that evening. *Id.* At around 11:30 P.M., Baumgardt went to the hospital for an x-ray, which did not show any fracture or dislocation, and a splint was applied. *Id.* Baumgardt testified that the pain lasted a week to a week and a half, he missed seven days of work because of the injury, and he was placed on limited duty for two to three weeks upon his return. *Id.* at 9.

Herron was tried by a jury on three charges: criminal sale of a controlled substance, assault in the second degree, and resisting arrest. *Id.* at 2–3. The jury acquitted him on the drug

---

references this docket entry. Additionally, the pages of this filing are not numbered. Any citations to particular pages in this Opinion refer to the page numbers of the pdf file itself.

[3]     Detective Baumgardt testified that an undercover officer, known as UC17, transmitted over the radio that as part of the transaction at issue, the seller had walked over to a black man who was "wearing a black baseball hat, yellow T-shirt, and blue jeans." R&R at 6 (citing the trial record). Baumgardt testified that he approached Herron because he matched that description. *Id.*

[4]     Before a "buy and bust" operation, NYPD photocopies the bills they plan to use to purchase drugs. This enables law enforcement to match the serial numbers of money found on suspects with money used by the officers in the drug purchase. The NYPD refers to these funds as "prerecorded buy money." R&R at 4, n.4.

charge but convicted him of assault and resisting arrest. *Id.* at 11. On appeal, the First Department of the New York Appellate Division unanimously affirmed his conviction and sentence. *Id.* at 14 (citing *People v. Herron*, 51 N.Y.S.3d 398 (1st Dep't 2017)). The Court of Appeals denied leave to appeal. *Id.* at 15 (citing *People v. Herron*, 29 N.Y.3d 1092 (2017)).

In his Petition for a Writ of Habeas Corpus, Herron claims that: (1) the evidence presented at trial was legally insufficient to support the verdict on the assault charge because the prosecution failed to present objective evidence that corroborated Detective Baumgardt's testimony regarding his physical injury and that proved beyond a reasonable doubt that Petitioner had caused the injury; (2) his acquittal on the drug charge made any evidence that could have supported his conviction on the assault and resisting arrest charges legally insufficient to support the verdict; and (3) the trial judge gave an improper jury instruction on the element of causation for the assault charge.

## LEGAL STANDARD

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02-CV-5810, 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citation omitted); *see also Wilds v. United Parcel Serv. Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

When specific objections are made to the R&R, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). But such objections "may not simply regurgitate the original briefs to the magistrate judge." *Hernandez v. City of New York*, No. 11-CV-6644, 2015 WL 321830, at *2 (S.D.N.Y. Jan. 23, 2015) (internal

3

citation omitted). To the extent the party "simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *see also O'Callaghan v. New York Stock Exch.*, No. 12-CV-7247, 2013 WL 3984887, at *1 (S.D.N.Y. Aug. 2, 2013) (collecting cases).

An error is clear when the reviewing court is left with a "definite and firm conviction that a mistake has been committed." *See Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (quoting *McAllister v. United States*, 348 U.S. 19, 20 (1954)).

## DISCUSSION

A careful review of Herron's objections reveals that they are all reiterations of arguments Herron previously made in this litigation and were properly considered by Judge Freeman.[5] Accordingly, the Court reviews the R&R for clear error. Finding no clear error, the Court adopts the R&R in full and denies the Petition.

Herron first argues that the evidence presented at trial was legally insufficient to support the verdict on the assault charge because the prosecution failed to present objective evidence to corroborate the existence of Detective Baumgardt's physical injury and to prove beyond a reasonable doubt that Petitioner caused the injury. Judge Freeman was correct to conclude that Herron had exhausted all state judicial remedies for this claim, as he raised these arguments in constitutional terms before both the Appellate Division and in his application for leave to appeal to the New York Court of Appeals. R&R at 22. On the merits, Judge Freeman applied the correct legal standard, examining whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime to have been

---

[5] In his objections, Herron notes that many of his arguments are "as in the petitioner's Memorandum of Law," demonstrating that he too recognizes that his objections simply repeat arguments previously made to the Magistrate Judge. Pl. Objections at 1, 3.

4

proven beyond a reasonable doubt. *Id.* at 23–24 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). With respect to the existence of the injury, Judge Freeman evaluated the evidence offered at trial, including Baumgardt's testimony, the hospital records, and the testimony from two other NYPD officers who testified that Baumgardt's hand appeared swollen and that he complained of pain following Herron's arrest. R&R at 25 (citing the trial record). Applying the correct legal standard, Judge Freeman properly concluded that this evidence was sufficient for a rational finder of fact to have found, beyond a reasonable doubt, that Baumgardt suffered the physical injury in question. With respect to causation, even though Baumgardt testified that he did not know the precise moment that he was injured, Judge Freeman was correct to conclude that, in light of all of the trial testimony, it was reasonable for the jury to find that Baumgardt was injured as a result of Petitioner's actions during the course of the arrest. *Id.* at 26–27. Accordingly, the Court agrees with Judge Freeman that the Petitioner had not demonstrated that the Appellate Division's decision to reject this claim was an unreasonable application of federal law. The Court thereby denies this claim for lack of merit.

Herron next argues that his acquittal on the drug charge made any evidence that could have supported his conviction for assault and resisting arrest legally insufficient. Here too Judge Freeman was correct to conclude that the Appellate Division reasonably applied clearly established federal law. As the Appellate Division and Judge Freeman reasoned, Petitioner's argument ignores the difference between the burdens of proof to convict, which requires proof beyond a reasonable doubt, and to arrest, which requires only probable cause. *Id.* at 31. Because probable cause is a lower threshold than proof beyond a reasonable doubt, it was reasonable for the jury to find that there was probable cause to arrest Herron for the drug offense but that the evidence was not sufficient to prove, beyond a reasonable doubt, that Herron was involved in the drug transaction. *Id.* at 32. Accordingly, the Court agrees with Judge Freeman that the state

court did not misapply federal law in coming to this conclusion and that this claim must be denied.

Herron further argues that the trial judge gave an improper jury instruction on the element of causation for the charge of assault in the second degree. In his Petition, Herron argues that the jury instruction was impermissibly confusing, incorrectly appended two separate statements into one sentence, and unlawfully shifted the burden of proof on malice. R&R at 35–36; Pet. Reply, Dkt. 22 at 15. On his first point, that the jury instruction was confusing, Judge Freeman correctly concluded that Herron had exhausted this claim in state court. *Id.* at 36–37. She also applied the correct legal standard to evaluate this claim: to present a Constitutional problem, the challenged instruction must "by itself so infect[] the entire trial that the resulting conviction violates due process." *Id.* at 37 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The Court agrees that Herron has not demonstrated that the instruction itself was erroneous, much less that it was so erroneous that it so infected the trial that Herron's due process rights were violated. Accordingly, this claim is denied.

Herron further argues that the jury instruction incorrectly appended two sentences together that should have remained separate.[6] Judge Freeman was correct to find that even upon a generous read of Petitioner's appellate briefs, these claims were not exhausted before the New York courts. R&R at 36. The Court further agrees with Judge Freeman, albeit for slightly different reasons, that Herron would not be entitled to relief on this claim even if had been properly exhausted in state court. *Id.* (citing 28 U.S.C. § 2254(b)). In his reply memorandum of law, Herron asserted that the jury instruction included the following: "In other words, when the conduct sets in motion or continued in motion the events which ultimately resulted in such

---

[6] Herron also asserts that the jury instruction on causation improperly shifted the burden of proof on malice to the defendant. A review of the full jury instruction on causation reveals that malice was not referenced in any way; accordingly, the instruction on malice could not have impermissibly shifted the burden of proof away from the prosecution. *See* Trial Tr. at ECF 991.

injury, an obscure or merely probable connection between the conduct and the injury will not suffice." Pet. Reply at 12; *see also* Trial Tr., Dkt. 19-3 at ECF 991. He argues that this was incorrect, as the instruction should have been separated in the following way: "In other words, when the conduct set in motion or continued in motion the events which ultimately resulted in such injury. An obscure or merely probable connection between the conduct and the injury will not suffice." Pet. Reply at 13. Herron is correct that New York's Criminal Jury Instructions separate this thought into two distinct "sentences." *See* N.Y. Crim. Jury. Instr. 2d Penal Law § 120.05, *available at* https://www.nycourts.gov/judges/cji/2-PenalLaw/120/AC.120.Causation.pdf. There was, however, no error in combining the thoughts into a single sentence. First, the pattern instruction on which Herron relies is grammatically incorrect: the first "sentence" is not, in fact, a sentence. It has a dependent clause ("when the conduct set in motion or continued in motion the events which ultimately resulted in such injury") and a prepositional phrase ("in other words"), but it lacks a subject and a predicate. By attaching the dependent clause to the subject and predicate ("an obscure or merely probable connection between the conduct and the injury will not suffice"), the trial court corrected the grammatical error; the resulting sentence is (a) grammatically correct and (b) not at all confusing. In short, Herron has not demonstrated that the instruction was confusing or erroneous, much less that it was so erroneous that it so infected the trial as to violate Herron's due process rights. The Court therefore agrees with Judge Freeman and denies this claim.

## CONCLUSION

For the reasons discussed above, the Court adopts Judge Freeman's R&R in full and Herron's Petition for a Writ of Habeas Corpus is DENIED.

The Court declines to issue a certificate of appealability. Petitioner has not made a substantial showing of a denial of a federal right pursuant to 28 U.S.C. § 2253(c), and appellate review is therefore not warranted. *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to terminate all pending deadlines and motions and close the case. The Clerk is further directed to mail a copy of this Order to Mr. Herron and to note the mailing on the docket.

**SO ORDERED.**

Date: February 19, 2021
New York, NY

_____
**VALERIE CAPRONI**
**United States District Judge**